FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 27, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

MONICA S.,

                              Plaintiff,

     v.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,

                              Defendant.

NO:  1:19-CV-03092-FVS

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

        BEFORE THE COURT are the parties' cross motions for summary

judgment.  ECF Nos. 11 and 13.  This matter was submitted for consideration

without oral argument.  The Plaintiff is represented by Attorney D. James Tree.

The Defendant is represented by Special Assistant United States Attorney Jacob

Phillips.  The Court has reviewed the administrative record, the parties' completed

briefing, and is fully informed.  For the reasons discussed below, the Court

**GRANTS** Plaintiff's Motion for Summary Judgment, ECF No. 11, and **DENIES**

Defendant's Motion for Summary Judgment, ECF No. 13.

ORDER ~ 1

## JURISDICTION

Plaintiff Monica S.[1] filed for supplemental security income on June 12, 2015, and child's insurance benefits on June 16, 2015, alleging an onset date of June 26, 2012 in both applications. Tr. 247-59. Benefits were denied initially, Tr. 119-33, and upon reconsideration, Tr. 137-48. A hearing before an administrative law judge ("ALJ") was conducted on February 23, 2018. Tr. 33-71. Plaintiff was represented by counsel and testified at both hearings. *Id*. The ALJ denied benefits, Tr. 12-32, and the Appeals Council denied review. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 25 years old at the time of the hearing. Tr. 49. She finished the ninth grade. Tr. 49. At the time of the hearing, Plaintiff lived alone with an emotional support dog. Tr. 63. Plaintiff has no work history. Tr. 50. On the alleged onset date, Plaintiff witnessed her father being fatally shot, and she sustained a gunshot wound to the face. Tr. 50-51.

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER ~ 2

Plaintiff testified that she has blurry vision as a result of her injury; however, she reported that her primary limitation is mental health issues. Tr. 51-52. She "lives in fear" of "running into a problem," she has flashbacks to the shooting every week, and she gets angry at people "a lot." Tr. 55-56, 58. Plaintiff testified that she could not do a full-time job because of her PTSD and anxiety, and because she cannot focus when she has flashbacks. Tr. 57, 67, 70.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the

ORDER ~ 3

record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the

ORDER ~ 4

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

ORDER ~ 5

404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable

ORDER ~ 6

of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 26, 2012, the alleged onset date. Tr. 18. At step two, the ALJ found that Plaintiff has the following severe impairments: major depressive disorder (MDD), general anxiety disorder (GAD), unspecified personality disorder, oppositional defiant disorder (ODD), posttraumatic stress disorder (PTSD), marijuana use, methamphetamine use in early remission, and alcohol use. Tr. 18. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 18. The ALJ then found that Plaintiff has the RFC

> to perform a full range of work at all exertional/physical levels but with the following nonexertional limitations: she is limited to work that requires her to perform simple repetitive tasks. She sustains adequate concentration, persistence or pace with simple tasks that are routine for two-hour periods with customary breaks in an eight-hour workday. She is limited to only superficial interaction and no more than occasional interaction with the general public. She should have no interaction with general public for performance of job tasks. She can accept supervision but should have clear boundaries from superiors/supervisors. She can interact with coworkers but no requirement to work in coordination with coworkers (no tandem work/cooperative work tasks). She can sustain work tasks but no changes than those that are very routine in nature. She should not work at production rate pace. She can have work with goals but not with quotas such as a production line pace.

Tr. 21.  At step four, the ALJ found that Plaintiff has no past relevant work.  Tr.

26.  At step five, the ALJ found that considering Plaintiff's age, education, work

experience, and RFC, there are jobs that exist in significant numbers in the national

economy that Plaintiff can perform, including: can filling and closing machine

tender, lab cleaner, and hospital cleaner.  Tr. 26-27.  On that basis, the ALJ

concluded that Plaintiff has not been under a disability, as defined in the Social

Security Act, from June 12, 2012, through the date of the decision.  Tr. 27.

### ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

her disability insurance benefits under Title II of the Social Security Act and

supplemental security income benefits under Title XVI of the Social Security Act.

ECF No. 11.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly considered the medical opinion evidence; and

2.  Whether the ALJ properly considered Plaintiff's symptom claims.

### DISCUSSION

**A. Medical Opinions**

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining

ORDER ~ 8

physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

Plaintiff argues the ALJ erroneously considered the opinions of examining psychologist CeCilia R. Cooper, Ph.D., examining psychologist N.K. Marks, Ph.D., reviewing psychologist Melanie Mitchell, Ph.D., reviewing psychologist Phyllis N. Sanchez, Ph.D., and reviewing state agency psychologists Patricia Kraft, Ph.D. and Carla van Dam, Ph.D. ECF No. 11 at 11-20.

### 1. Dr. CeCilia R. Cooper

In November 2015, Dr. Cooper examined Plaintiff and opined that she is able to remember and complete instructions for tasks involving two or three unrelated steps, remember written material, and appropriately respond to normal hazards. Tr. 348. Dr. Cooper additionally opined that

ORDER ~ 9

[w]hen she is required to interact frequently with other persons her ability to maintain concentration is apt to be poor because of anxiety. If she has a comfortable routine to follow by herself, her ability to concentrate would be adequate. . . . She would require moderately close supervision to ensure she completes tasks as instructed throughout a normal shift. Her ability to maintain appropriate social interactions with persons in authority is apt to be moderately to markedly impaired depending upon the circumstances. She would have some problems with peers because of mistrust and low self-esteem. She is apt to have moderate to marked difficulty adapting to changes depending upon the perceived benefit.

Tr. 348. The ALJ gave "significant weight" to Dr. Cooper's opinion because it was "consistent with the record as a whole," including Plaintiff's "infrequent" course of treatment, performance at mental status examinations, and her ability to do housework, attend classes, go to the library, use the computer, and read. Tr. 25. Plaintiff argues that the ALJ assigned significant weight to Dr. Cooper's opinion, but "failed to adequately account for all of her opined limitations, without specific and legitimate reasons for doing so." ECF No. 11 at 12. The Court agrees.

Here, Dr. Cooper specifically opined that Plaintiff "would require moderately close supervision to ensure she completes tasks as instructed," but Dr. Cooper simultaneously found that Plaintiff's "ability to maintain appropriate social interactions with persons in authority is apt to be moderately to markedly impaired depending upon the circumstances." Tr. 347. Presumably in an attempt to incorporate the latter portion of Dr. Cooper's opinion into the RFC, the ALJ found Plaintiff "can accept supervision but should have clear boundaries from superiors/supervisors." Tr. 21. Defendant argues that "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC," and that "the

ORDER ~ 10

ALJ's [RFC], read as a whole, reasonably accommodated Dr. Cooper's assertions." ECF No. 13 at 8 (citing *Rounds v. Comm'r Soc. Sec. Admin*., 807 F.3d 996, 1006 (9th Cir. 2015); *see also Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1271, 1223 (9th Cir. 2010) (an ALJ's findings need only be consistent with a physician's credited limitations, not identical to them). However, as noted by Plaintiff, "[w]hile it is true that the ALJ is not bound to adopt, verbatim, the opinions of a medical source, the ALJ is nevertheless required to explain why any conflicting opinions have not been adopted," and here, the ALJ's "limitation to needing additional supervision to maintain work tasks was not captured in the ALJ's RFC, and no explanation was provided to [justify] its rejection." ECF No. 14 at 5; *see* SSR 96-8p, 1996 WL 374184 at *7 (Jul. 2, 1996).

The Court finds the ALJ erred by failing by either providing the requisite reasons to reject Dr. Cooper's opinion that Plaintiff required "moderately close supervision," or to specifically incorporate this limitation into the assessed RFC. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (failure to address medical opinion was reversible error); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) ("an ALJ is not free to disregard properly supported limitations"). Moreover, it appears the ALJ accorded significant weight only to Dr. Cooper's assessment that Plaintiff was "moderately to markedly impaired" in her ability to maintain appropriate social interactions with persons in authority, and incorporated that assessment into the RFC by limiting Plaintiff to accepting supervision only with "clear boundaries from superiors/supervisors"; however, the

ALJ failed to resolve the internal discrepancy between Dr. Cooper's opinion that Plaintiff "required moderately close supervision," and her conflicting assessment that Plaintiff was moderately to markedly able to maintain appropriate social interactions with people in authority. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (ALJ is responsible for "resolving conflicts in medical testimony, and for resolving ambiguities.").

Finally, the record, as it stands, does not permit the Court to conclude that the error is harmless. *See Molina*, 674 F.3d at 1115 (error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."). Because the hypothetical RFC posed to the vocational expert did not accurately reflect all of Plaintiff's limitations, the expert's testimony has no evidentiary value to support the ALJ's step five finding that plaintiff can perform jobs in the national economy. *Robbins*, 466 F.3d at 886. Accordingly, the ALJ's step five determination is unsupported by substantial evidence. Because the ALJ erred by failing to either reject or properly incorporate Dr. Cooper's opinion that Plaintiff required moderately close supervision, and/or resolve the apparent inconsistency between Dr. Cooper's conflicting opinions regarding Plaintiff's ability to interact with supervisors, the opinion must be reconsidered on remand, along with the subsequent steps of the sequential analysis.

## 2. *Dr. N.K. Marks*

Dr. Marks examined Plaintiff in May 2015 and May 2017. Tr. 335-40, 436-42. In May 2015, Dr. Marks opined that Plaintiff had severe limitations in her

ORDER ~ 12

ability to perform activities within a schedule, maintain regular attendance, and be

punctual within customary tolerances without special supervision; be aware of

normal hazards and take appropriate precautions; communicate and perform

effectively in a work setting; maintain appropriate behavior in a work setting;

complete a normal work day and work week without interruptions from

psychologically based symptoms; and set realistic goals and plan independently.

Tr. 337-38.  In May 2017, Dr. Marks opined that Plaintiff had severe limitations in

her ability to communicate and perform effectively in a work setting; maintain

appropriate behavior in a work setting; complete a normal work day and work

week without interruptions from psychologically based symptoms; and set realistic

goals and plan independently.  Tr. 439-40.  Dr. Marks also opined that Plaintiff had

marked limitations in her ability to understand, remember, and persist in tasks by

following detailed instructions; perform activities within a schedule, maintain

regular attendance, and be punctual within customary tolerances without special

supervision; learn new tasks; perform routine tasks without special supervision;

adapt to changes in a routine work setting; make simple work-related decisions;

and ask simple questions or request assistance.  Tr. 439-40.  The ALJ gave little

weight to Dr. Marks' opinions for several reasons.  Tr. 25.

　　　First, the ALJ found that Dr. Marks' opinions are "snapshots of [Plaintiff's]

functioning when [Plaintiff] admittedly was not getting treatment or taking any

antipsychotic medications at a time despite the recommended psychotherapy and

continues to use alcohol, drugs, including marijuana."  Tr. 25.  The consistency of

ORDER ~ 13

a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion. *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). However, as noted by Plaintiff, when explaining his reasons for rejecting medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id*.

Here, the ALJ fails to explain with requisite specificity how Plaintiff's treatment history, and her self-report that she used medical marijuana, contradicts Dr. Marks' opinion. This error is particularly relevant given that Dr. Marks conducted independent mental status examinations of the Plaintiff, discussed in detail below; and Dr. Marks specifically considered Plaintiff's use of medical marijuana and alcohol in May 2017, as well as her lack of mental health treatment in both opinions. Tr. 335-38, 437-39. Thus, because the ALJ failed to explain why or how Plaintiff's lack of treatment, and admitted use of alcohol and medical marijuana, undermines Dr. Marks' examining opinions, this was not a not specific, legitimate reason, supported by substantial evidence, to reject Dr. Marks' opinions. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("the agency [must] set forth the reasoning behind its decisions in a way that allows for meaningful review").

Second, the ALJ noted that Dr. Marks was not Plaintiff's treating psychologist, and "[f]urthermore, Dr. Marks' opined severity of [Plaintiff's] limitations is internally inconsistent with Dr. Marks' own descriptions of [Plaintiff's] presentations during the corresponding mental status examinations." Tr. 25. As an initial matter, while the ALJ may consider the length and nature of a treatment relationship in evaluating a medical opinion, the ALJ may not discredit a medical opinion solely because the provider was not a treating source. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). The Court also notes the ALJ's reasoning on this point is inconsistent with the "significant" weight given to state agency reviewing psychologists Dr. Kraft and Dr. van Dam, who had no treatment relationship with Plaintiff. Tr. 24. Furthermore, internal inconsistencies within a physician's report constitute relevant evidence when weighing medical opinions. *Morgan v. Comm'r Soc. Sec. Admin*., 169 F.3d 595, 603 (9th Cir. 1999); see also *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (an ALJ may properly reject a medical opinion if it is inconsistent with the provider's own treatment notes). However, as noted by Plaintiff, many of the records cited by the ALJ in support of this finding are Comprehensive Mental Health treatment records, as opposed to the mental status examinations performed by Dr. Marks as part of her evaluations. ECF No. 11 at 16 (citing Tr. 408, 410, 413, 418, 420, 423, 426-29, 434). Moreover, the Court's review of Dr. Marks' mental status examinations reveals largely abnormal findings, including: poor grooming, depressed mood, thought process and content not within normal limits, perception not within normal

ORDER ~ 15

limits, memory not within normal limits, fund of knowledge not within normal limits, abstract thought not within normal limits, and insight and judgment not within normal limits; and Dr. Marks' clinical findings placed Plaintiff in the moderate to severe range of anxiety, severe range of depression, and severe range of PTSD.  Tr. 336, 339-40, 438-39, 440-42.  Without further explanation of how the severe and marked limitations opined by Dr. Marks were internally inconsistent with her own abnormal mental status examination findings, the ALJ's conclusory rejection of Dr. Marks' opinions for this reason is not supported by substantial evidence.  This was not a specific and legitimate reason for the ALJ to reject Dr. Marks' opinions.

Third, and finally, the ALJ generally cites "subsequent treatment records" indicating that Plaintiff "resumed counseling" in June 2017, and in October 2017 "she denied any mental health symptoms except trouble in understanding, concentrating, and remembering."  Tr. 25 (citing Tr. 390).  The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion.  *See Orn*, 495 F.3d at 631.  However, in support of this finding, the ALJ relies entirely on Plaintiff's single self-report in October 2017 that for the "past 30 days" she did not have "a significant period of time" in which she experience severe depression or anxiety, thoughts of suicide, or thoughts of harming another person. Tr. 24, 390.  Moreover, while the ALJ briefly references Plaintiff's return to counseling in June 2017, the Court's review of the record indicates that she was subsequently discharged from counseling in October 2017

ORDER ~ 16

due to "not coming in" for services.  *See* Tr. 382-87, 403.  Thus, as above, the ALJ

fails to explain how this brief citation to the "subsequent treatment record" is

inconsistent with Dr. Marks' examining opinions, including thorough mental status

examinations indicating Plaintiff was not within normal limits in thought process

and content, perception, memory, fund of knowledge, abstract thought, and insight

and judgment.  *Reddick*, 157 F.3d at 725 (when explaining his reasons for rejecting

medical opinion evidence, the ALJ must do more than state a conclusion; rather,

the ALJ must "set forth his own interpretations and explain why they, rather than

the doctors', are correct.").  Thus, to the extent the ALJ rejected Dr. Marks'

opinions because they were inconsistent with "subsequent records," this was not a

specific and legitimate reason, supported by substantial evidence.

For all of these reasons, the ALJ did not properly consider Dr. Marks' May

2015 and May 2017 opinions, and they must be reconsidered on remand.

### 3.  *Additional Medical Opinions*

Plaintiff argues the ALJ improperly considered the reviewing opinions of

Dr. Melanie Mitchell, Dr. Phyllis N. Sanchez, Dr. Patricia Kraft, and Dr. Carla van

Dam.  Tr. 24-25, 80-81, 101-02, 372, 381.  The ALJ gave "little weight" to the

May 2017 reviewing opinion of Dr. Melanie Mitchell because it was conclusory,

did not provide any explanation, and was "based on the narrative" of Dr. Marks'

opinions which the ALJ gave "little weight."  Tr. 25.  However, as noted by

Plaintiff, and discussed above, "[w]hile it is true that Dr. Mitchell based the

opinion of Dr. Marks' opinions, it has been shown that the ALJ erroneously

ORDER ~ 17

rejected these opinions and findings." ECF No. 11 at 18-19. Thus, on remand, the ALJ should reconsider Dr. Mitchell's opinion. As a final matter, in light of the need to reconsider the examining medical opinion evidence, the ALJ should reconsider the reviewing medical opinion of Dr. Phyllis N. Sanchez, which was also based on Dr. Marks' May 2015 opinion, and the state agency reviewing opinions of Dr. Patricia Kraft and Dr. Carla van Dam.

## B. Plaintiff's Symptom Claims

Plaintiff also challenges the ALJ's consideration of Plaintiff's symptom claims. ECF No. 11 at 2-11. Specifically, Plaintiff alleges that the ALJ erred by rejecting Plaintiff's symptom claims because (1) she has undergone only sporadic mental health treatment, which "suggests her symptoms are not as severe as she has alleged and indicates her unwillingness to comply with her treatment plan"; and (2) her "allegations of chronic, incapacitating mental symptoms appear incompatible with her relatively benign presentations" on mental health examinations. Tr. 22-24. Thus, because the analysis of Plaintiff's symptom claims is largely dependent on the ALJ's reconsideration of the medical evidence on remand, including Dr. Cooper opinion that Plaintiff's "compliance with treatment is apt to be erratic because of her personality factors and because of mistrust," and Dr. Marks' opinion that Plaintiff "would benefit from some psychotherapy" but she is "quite untrusting and this will be somewhat of a feat to organize," the Court declines to address Plaintiff's challenges in detail here. Tr. 347, 369; *See Nguyen*, 100 F.3d at 1465 (where the evidence suggests lack of mental health treatment is

ORDER ~ 18

part of a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment in rejecting Plaintiff's symptom claims). On remand, the ALJ is instructed to reevaluate Plaintiff's symptom claims and conduct a new sequential analysis.

## REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose).  Here, the ALJ improperly considered the medical opinion evidence, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence.  "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate."  *Treichler*, 775 F.3d at 1101.  Instead, the Court remands this case for further proceedings.  On remand, the ALJ should reconsider the medical opinion evidence, and provide legally sufficient reasons for evaluating the opinions, supported by substantial evidence.  If necessary, the ALJ should order additional consultative examinations and, if appropriate, take additional testimony from a medical expert.  In addition, the ALJ should reconsider Plaintiff's symptom claims, the remaining steps in the sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

**ACCORDINGLY, IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 11, is **GRANTED**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2. Defendant's Motion for Summary Judgment, ECF No. 13, is **DENIED**.

ORDER ~ 20

1

3.  Application for attorney fees may be filed by separate motion.

2

The District Court Clerk is directed to enter this Order and provide copies to

3

counsel.  Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

4

**DATED** May 27, 2020.

5

6



7

8

Stanley A. Bastian
United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

ORDER ~ 21